**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

ROBERTO IZQUIERDO CAMARENA,

Petitioner,

v.

UNITED STATES OF AMERICA, *et al.*,

Respondents.

Case No. 2:25-cv-01219-RFB-EJY

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Before the Court is Petitioner Roberto Izquierdo Camarena's First Amended Petition for Writ of Habeas Corpus (ECF No. 19). Through it, Mr. Camarena challenges his ongoing detention at the hands of Immigration and Customs Enforcement ("ICE"). See generally First Am. Pet. for Writ of Habeas Corpus, ECF No. 19 (Mar. 6, 2026) [hereinafter, "Am. Pet."]. Because Respondents have failed to articulate a lawful basis for Mr. Camarena's detention, the Court grants the Petition, awards Mr. Camarena a writ of habeas corpus, and orders Respondents to release him from custody.

## I. BACKGROUND

From the outset, the Court makes the following findings of fact based on the Parties' undisputed allegations and the evidence they supply. See Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (describing the factfinding process in habeas corpus proceedings).

Mr. Roberto Izquierdo Camarena is a native of Mexico who entered the United States in 2000, when he was only five years old. See Am. Pet. at 4. Since then, he has become a lawful permanent resident and resided legally within our borders. See id. Indeed, Mr. Camarena has formed a family, been gainfully employed, and integrated himself into our national community—

which he has belonged to for nearly his entire life. See id.

Mr. Camarena's time within the United States has not been without incident. In late 2023, Mr. Camarena plead guilty to "one count of discharging a firearm at or into an occupied structure;" to this day, he maintains that he did not "intend[ ] to harm [another] person" in doing so. See id.; Guilty Plea Memo. 7–11, ECF No. 5-3 (Oct. 24, 2023). Following his plea, the Second Judicial District Court of the State of Nevada "imposed a suspended sentence and placed [Mr. Camarena] into a drug court diversion and probation program." Am. Pet. at 4; see also J. of Conviction 15–16, ECF No. 5-3 (Feb. 7, 2024). Subsequently, Mr. Camarena complied with the terms of this program, and his conviction would have been removed from his criminal record had he completed it. See Am. Pet. at 5. But Mr. Camarena did not have an opportunity to do so due to his detention by Respondents.

ICE arrested Mr. Camarena "during a scheduled probation check-in" on April 18, 2024. See Am. Pet. at 5. Shortly thereafter, the Department of Homeland Security ("DHS") initiated removal proceedings against him, alleging that he is removable under 8 U.S.C. § 1227(a)(2)(A)(iii) because he was—purportedly—convicted of an aggravated felony. See id. at 5; Notice to Appear 1, ECF No. 5-2 (May 2, 2024). Mr. Camarena disagrees, and he is actively challenging his removal order before the Ninth Circuit Court of Appeals. See generally Pet. for Review, Izquierdo Camarena v. Blanche, No. 25-6078 (9th Cir. Sep. 26, 2025) (ECF No. 1). Indeed, the Ninth Circuit has granted a stay of removal, and afforded Mr. Camarena representation, to review this precise issue. See Order, Izquierdo Camarena v. Blanche, No. 25-6078 (9th Cir. Apr. 24, 2026) (ECF No. 16). Of course, the Court expresses no opinion on Petitioner's removal proceedings, as they are beyond the scope of this Court's jurisdiction. See 8 U.S.C. §§ 1252(b)(9), 1252(g). Rather, the Court focuses on Mr. Camarena's prolonged detention at the Nevada Southern Detention Center, which has now lasted over two years. Cf. Rodriguez Diaz v. Garland, 53 F.4th 1189, 1211 (9th Cir. 2022) (citations omitted) (reaffirming that immigration detention becomes prolonged after six months).

Turning to these proceedings, Mr. Camarena filed his original petition for a writ of habeas corpus on July 7, 2025. See generally Pet. for Writ of Habeas Corpus, ECF No. 1-1 (July 7, 2025).

Given the complexity of this case, the Court appointed the Federal Public Defender for the District of Nevada ("FPD") to represent Petitioner, and Mr. Camarena filed an amended petition on March 3, 2026. See generally Am. Pet. Through it, Mr. Camarena argues that his ongoing detention is unlawful under the Immigration and Nationality Act ("INA") and the Due Process Clause of the Fifth Amendment. See, e.g., id. at 2. Based on its preliminary review of the Amended Petition, the Court ordered Respondents to "[show cause] why a writ should not be granted;" specifically, Respondents were ordered to file "a return certifying the true cause of [Petitioner's] detention." Order to Show Cause 1, ECF No. 21 (Mar. 9, 2026). In turn, Respondents filed a (familiar) response which asserts that Mr. Camarena "is mandatorily detained under 8 U.S.C. § 1225(b)(2) and as a result of his aggravated felony conviction under 8 U.S.C. § 1227(a)(2)(A)(iii)." Fed. Resp'ts' Resp. 1–2, ECF No. 25 (Mar. 19, 2026) [hereinafter, "Opp'n"]. Mr. Camarena replied shortly thereafter, arguing that Respondents "failed to identify any lawful basis for Petitioner's continued detention." Traverse 2, ECF No. 26 (Mar. 31, 2026). For the following reasons, the Court agrees.

## II. JURISDICTION

As always, the Court begins by briefly reaffirming its own jurisdiction over this case. See Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006) (citations omitted) ("[C]ourts . . . have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."); Hoffmann v. Pulido, 928 F.3d 1147, 1151 (9th Cir. 2019) (citation omitted) (same). It is well settled that this Court has jurisdiction to grant writs of habeas corpus to noncitizens who are being detained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241; U.S. CONST. art. I, § 9, cl. 2; Trump v. J.G.G., 604 US. 670, 672 (2025). With that being said, the INA stripes federal courts of jurisdiction over certain claims. See generally 8 U.S.C. § 1252. Although the Parties do not invoke—or even mention—the INA's jurisdiction-stripping provisions, the Court has independently reviewed them and finds that they do not implicate this case.[1] Thus, the Court retains jurisdiction to resolve this matter pursuant to

[1] For instance, 8 U.S.C. § 1252(a)(5) does not strip this Court of jurisdiction over Mr. Camarena's habeas petition because he is "not seeking judicial review of [his removal order]." Singh v. Gonzalez, 499 F.3d 969, 978 (9th

28 U.S.C. § 2241.

## III. DISCUSSION

### A. *Statutory Framework*

By way of background, the INA provides a "complex statutory framework of detention authority." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008). Specifically, four provisions empower the government "to detain non-citizens who have been placed in removal proceedings:" 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a). See Avilez v. Garland, 69 F.4th 525, 529 (9th Cir. 2023) (citation modified). A noncitizen's place within this statutory web is significant. It "can affect whether [the noncitizen's] detention is mandatory or discretionary, as well as the kind of review process available to [them]." Id. (citation omitted).

### B. *Unlawful Detention*

Respondents invoke § 1227(a)(2)(A)(iii) and § 1225(b)(2)(A) to justify Mr. Camarena's detention. See Opp'n at 1–2. As such, they are the only provisions of the INA that are relevant to this case.[2] But Respondents ask too much of these provisions, as neither authorizes—much less requires—the detention of a lawful permanent resident.

#### i. Section § 1227(a)(2)(A)(iii)

First, Respondents cannot rely on a ground of deportability to defend Mr. Camarena's detention. Section 1227(a)(2)(A)(iii) defines a class of deportable noncitizens. See 8 U.S.C. § 1227(a)(2)(A)(iii) ("Any [noncitizen] who is convicted of an aggravated felony at any time after admission is deportable."). In of itself, it does not empower the government to detain people. See

---

Cir. 2007). Similarly, § 1252(g) does not implicate this case because Mr. Camarena is not challenging the Attorney General's discretionary "decision . . . to *commence* [his removal] proceedings, *adjudicate* [his case], or *execute* [his] removal order[ ]." Ibarra-Perez v. United States, 179 F.4th 743, 744 (9th Cir. 2026) (citations and quotation marks omitted); see also *supra* at 2 ("Of course, the Court expresses no opinion on Petitioner's removal proceedings, as they are beyond the scope of this Court's jurisdiction.") (citations omitted). Likewise, § 1252(b)(9) does not preclude judicial review of Mr. Camarena's habeas petition, as his detention-based claims are "independent of or collateral to the removal process." Ibarra-Perez v. United States, 154 F.4th 989, 1000 (9th Cir. 2025); see also Jennings v. Rodriguez, 583 U.S. 281, 293–94 (2018) (rejecting an "expansive" interpretation of § 1252(b)(9), particularly in the context of detention). So on and so forth, the INA does not present a jurisdictional bar to Mr. Camarena's habeas proceedings; accordingly, the Court proceeds to the merits of his case.

[2] Since Respondents do not invoke 8 U.S.C. § 1226(c) to justify Mr. Camarena's detention, see generally Opp'n, the Court declines to consider his prophylactic arguments concerning this provision. See generally Am. Pet. With that being said, the Court reserves the right to reach these arguments—including Mr. Camarena's due process claim—if doing so becomes necessary.

Avilez, 69 F.4th at 529 (defining the INA's four, discrete sources of detention authority, which do not include § 1227); see also Asihene v. Blanche, No. 2:26-cv-02131-RFB-MDC, 2026 WL 2211264, at *2 (D. Nev. July 31, 2026) (citation omitted) ("Detention cannot be authorized from [a] deportability charge alone, and the Court will not speculate as to which detention authority may or may not apply to a given noncitizen if offered this justification alone."). That is the end of this Court's inquiry with respect to this provision, as it plainly does not authorize Mr. Camarena's detention.

**ii. Section § 1225(b)(2)(A)**

Second, § 1225(b)(2)(A) cannot justify Mr. Camarena's detention. Federal Respondents invoke their novel (re)interpretation of this provision to argue that Petitioner is subject to mandatory detention because he has—purportedly—not been admitted to the United States. See Opp'n at 2 (citing Buenrostro-Mendez v. Bondi, 166 F.4th 494, 500 (5th Cir. 2026)). Federal Respondents are wrong, both on the law and on the facts. Beginning with the law, the government's radical reimagination of § 1225(b)(2)(A) has been resoundingly rejected across this circuit. See Jacobo-Ramirez v. Mullin, --- F. Supp. 3d ---, 2026 WL 879799, at *3 (D. Nev. Mar. 30, 2026) (citing Escobar Salgado v. Mattos, 809 F. Supp. 3d 1123 (D. Nev. 2025) ("This Court has already exhaustively considered the relevant statutory provisions and found that the government's interpretation of § 1225(b)(2)(A) is unlawful.")); Rodriguez Vazquez v. Bostock, --- F.4th ---, 2026 WL 2196424, at *3 ("For reasons that follow, we conclude that [noncitizens] present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)."). Turning to the facts, Mr. Camarena is a lawful permanent resident, such that he has been admitted to the United States. See Am. Pet. at 4; R. of Deportability/Inadmissibility 1, ECF No. 25-1 (Apr. 19, 2024); Notice to Appear 1, ECF No. 25-2 (Apr. 19, 2024) ("[Mr. Camarena was] admitted to the United States at El Paso, Texas on or about April 11, 2000 as a Lawful Permanent Resident."). Therefore, § 1225(b)(2)(A) is unequivocally inapplicable to Mr. Camarena. See Rodriguez Vazquez, 2026 WL 2196424, at *26 (emphasis added) (reaffirming that § 1225(b)(2)(A) applies to "*unadmitted* [noncitizens] entering the United States at the border").

**C. *Remedy***

Having found that Mr. Camarena's ongoing detention is unlawful, the Court turns to the proper remedy. Federal courts have equitable discretion to fashion habeas relief as "law and justice require." Brown v. Davenport, 596 U.S. 118, 132 (2022) (quoting 28 U.S.C. § 2243). Indeed, this Court's remedial power is "broad and flexible" when it sits in habeas. See U.S. v. Handa, 122 F.3d 690, 691 (9th Cir. 1997) (citation omitted); Burnett v. Lampert, 432 F.3d 996, 999 (9th Cir. 2005) (citation omitted) ("Federal courts have a fair amount of flexibility in fashioning specific habeas relief . . . . The court is free to fashion the remedy as law and justice require . . . ."). Nonetheless, since "[h]abeas is at its core a remedy for unlawful executive detention," "[t]he typical remedy for such detention is, of course, release." Munaf v. Geren, 553 U.S. 674, 693 (2008) (citations omitted). Since the government has utterly failed to identify any lawful basis for Mr. Camarena's detention—despite having multiple opportunities to do so over the course of a year—the Court finds that the typical remedy is the appropriate one in this case.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** Petitioner's First Amended Petition for Writ of Habeas Corpus (ECF No. 19) is **GRANTED**. Respondents must **RELEASE** Petitioner from detention on his own recognizance on **August 22, 2026**, between the hours of **12:00 P.M. and 3:00 P.M.** Counsel for Petitioner—and/or their agent—must be permitted to wait for Petitioner in the lobby of the Federal Justice Tower during this release window.

**IT IS FURTHER ORDERED** Respondents must **RETURN** Petitioner's personal property—including personal identification and/or employment authorization documents—upon his release.

**IT IS FURTHER ORDERED** Respondents are permanently **ENJOINED** from detaining Petitioner pursuant to 8 U.S.C. § 1225(b)(2)(A).

**IT IS FURTHER ORDERED** the Parties must file a **JOINT STATUS REPORT** by **August 24, 2026**, which confirms Respondents' compliance with this Order. The joint status report should: (i.) include the date and time of Petitioner's release; (ii.) confirm that Petitioner was

released on his own recognizance; and (iii.) confirm that Respondents returned Petitioner's personal property. The Court will consider contempt sanctions against any, and all, officials who fail to comply with this Order.

The Clerk of Court is kindly instructed to enter judgment accordingly and close this case. The Court retains jurisdiction to enforce its order and judgment. To that end, Petitioner may move to re-open this case without filing a new action.

**DATED:** August 21, 2026.

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**